IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

KEITH K JOINER,

    Petitioner,

v.                                                      CASE NO. 1:07-cv-181-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Doc. 1, Petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The Petition stems from Petitioner's Alachua County jury-trial conviction for burglary of a dwelling, for which he received a 15-year sentence. Petitioner raises five claims of ineffective assistance of counsel. The Court previously denied Respondent's motion to dismiss the Petition as unexhausted. Docs. 26, 28. Respondent subsequently filed a response contending that the Petition should be denied on the merits, and Petitioner has filed a reply. Docs. 36, 37. Upon due consideration of the Petition, the Response, the Reply, and the state-court record, the undersigned recommends that the Petition be denied.[1]

## State-Court Proceedings

Petitioner and a co-defendant, Antonio Green, were charged with burglary of a dwelling and burglary of a conveyance arising from the illegal entry into the home and

---

[1]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

car of the victim, Cindy Jean Hamilton. Respondent's Appendix Exhibit ("App. Exh.") A. Petitioner's defense at trial was based on the theory that Antonio Green committed the crimes. In particular, Petitioner testified that the night before the crimes Petitioner drove Green to the victim's house, and Green asked Petitioner to "check the [victim's] car door," which was locked. Petitioner testified that he was visiting Green's cousin on the night of the crimes, and Green let him use a cell phone that Petitioner then took with him. Subsequent testimony established that the phone, into which Petitioner's nickname had been programmed, belonged to the victim. Petitioner's testimony was intended to explain the evidence linking Petitioner to the crime scene and the stolen phone. *See* Exh. B. at 118-20. Antonio Green entered a plea to the charges, and did not testify at trial. *See id*. Exh. K.

Following his conviction, which was affirmed *per curiam* without opinion, *see id*. Exh. H, Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850 asserting five grounds of ineffective assistance of counsel: (1) counsel failed to investigate alibi witnesses; (2) counsel failed to disclose a potential conflict of interest because counsel's "supervisor" was one of the victims; (3) counsel failed to impeach the testimony of an investigating officer who had an interest in the case because he was a victim; (4) counsel failed to pursue questioning of Antonio Green, who had testified in his deposition that he did not know Petitioner; and (5) counsel failed to pursue exculpatory evidence. *Id*. Exh. G. at 1-4.

Assessing Petitioner's claims under *Strickland v. Washington*, 466 U.S. 668 (1984), the trial court summarily denied relief as to grounds (2), (3), and (5), because Petitioner did not specifically allege any prejudice stemming from the asserted errors.

The court ordered an evidentiary hearing on grounds (1) and (4), and appointed counsel to represent Petitioner.   *Id*. at 21-24.

At the evidentiary hearing, Petitioner testified that he was prejudiced by counsel's failure to call Antonio Green as a witness because Green testified in his deposition that he did not know Petitioner, and Green would have testified at trial that he did not tell the police that Petitioner committed the crimes, contrary to statements in the police report. Petitioner testified that he told his trial counsel, Barbara Blount-Powell, that Eric Banks and Kennard Green could have testified as to his whereabouts on the night of the crimes.  Petitioner identified as other possible alibi witnesses Valerie Price and Shameka Washington.  On cross-examination, Petitioner conceded that during a pre-trial *in camera* conference with the trial judge, Ms. Blount-Powell explained that she would not call any alibi witnesses because "she thought they was lying or something like that."  *Id*. at 6-16.

Ms. Blount-Powell testified that she deposed Antonio Green and other witnesses identified by the State.  In addition to denying that he knew Petitioner, Green denied knowing that he had pleaded guilty and denied knowing why he was on probation. Green's deposition testimony was problematic because Petitioner had admitted to counsel that he and Green were friends.  Based on Green's deposition testimony, counsel concluded that Green "lacked credibility," and that to call Green as a witness would have been "self defeating."  Counsel explained that she "had no reason to call him at trial for him to then be impeached by the State Attorney with his statement [in the police report] implicating [Petitioner]."  There were no statements other than Green's implicating Petitioner in the burglary, and counsel was able to introduce through cross-

examination of a police officer that a person other than Petitioner (Green) had pleaded guilty to the burglary.

On cross-examination as to why she did not call Green as a defense witness, counsel testified that "I would have been presenting evidence that I believe was untruthful." She testified that she discussed her trial strategy with Petitioner, and explained that she would not call Green because it would open the door to information she was trying to keep out. Counsel explained that the primary difficulty with Petitioner's defense was the fingerprint evidence linking Petitioner to the crime scene. She testified that three of the possible witnesses identified by Petitioner did not provide any alibi, and that Eric Banks' testimony was not helpful to Petitioner because it "didn't quite fit everything." *Id*. at 25-36.

At the conclusion of the evidentiary hearing, the court denied relief on Petitioner's remaining two postconviction claims. The court explained that "[t]here were tactical choices that a person must make when they're representing someone. . . . So in regard to Ms. Blount-Powell, the tactical choices and the strategy that was done and made by the testimony that I've heard today at this evidentiary hearing shows me that there was no prejudice shown to the Defendant and no ineffectiveness on the part of Counsel." *Id*. at 42. The First District Court of Appeal affirmed *per curiam* without opinion. *Id*. Exh. R.[2]

Petitioner filed the instant federal habeas petition, which Respondent concedes is

---

[2] A full discussion of the proceedings on appeal from the denial of Petitioner's Rule 3.850 motion is set forth in the Court's Report and Recommendation on Respondent's motion to dismiss for failure to exhaust. *See* Doc. 26.

timely. Petitioner asserts the same five ineffective-assistance claims that he raised in his Rule 3.850 motion. Respondent contends that Petitioner's federal claims differ in some respects from the claims asserted in state court, and therefore that some of Petitioner's claims are unexhausted. Doc. 36. Because the Court previously denied Respondent's motion to dismiss the Petition for failure to exhaust, there is no basis for revisiting the exhaustion issue. In any event – as explained below – it is clear that Petitioner is not entitled to relief on the merits of his habeas claims, and the Court may deny relief notwithstanding any failure to exhaust. 28 U.S.C § 2254(b)(2).

### Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower

federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also, Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state court's

decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

## **Ineffective Assistance of Counsel**

Because Petitioner's claims raise the issue of counsel's effectiveness, a review of *Strickland*, is appropriate. To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786 (2011). The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on

the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## **Petitioner's Claims**

Upon an independent review of the trial record and the state court's disposition of these claims on postconviction review, and mindful of the high degree of deference that is afforded to the state court's assessment of the merits of Petitioner's claims, the Court concludes that Petitioner has presented no basis for federal habeas relief.

### (1) <u>Failure to investigate alibi witnesses</u>

Petitioner contends that Kennard Green, Valerie Price, Shameka Washington, and Eric Banks would have provided testimony that would have undermined and/or explained the State's evidence linking Petitioner to the stolen cell phone and the fingerprint on the victim's car, and that would have provided Petitioner with an alibi for the time during which the crimes occurred. Doc. 1.

"Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980). To the extent that Petitioner provides any explanation as to how such witnesses' testimony would have benefitted him, his claims are wholly speculative and unsupported by anything in the record. After hearing counsel's testimony regarding her investigation of these witnesses and her determination that the witnesses' testimony would not be helpful to Petitioner, the state court concluded that counsel's decision not to call alibi witnesses was a reasonable tactical choice. On the basis of this record, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of federal law, or an unreasonable determination of the facts in light of the evidence adduced in state court.

### (2) <u>Failure to conflict out of case</u>

Petitioner alleges that his trial counsel informed him before trial that she knew a victim in a "related case," Major Robert Chapman of the Alachua County's Sheriff's Office, whom Petitioner describes as counsel's "supervisor." Petitioner also contends

that counsel advised him that she and an investigating officer, Benjamin Smith, "go way back." Petitioner asserts that these relationships amount to a "conflict of interest" that biased counsel's representation of Petitioner. The state court summarily rejected this claim because Petitioner made an insufficient allegation of prejudice.

In *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980), the Court held that if a defendant establishes (1) "that his counsel actively represented conflicting interests" and (2) that the conflict "adversely affected his lawyer's performance," then a defendant is presumed to be prejudiced. *Sullivan*, 446 U.S. at 350. However, *Sullivan* only encompasses an attorney conflict of interest stemming from the concurrent joint representation of criminal defendants. *See Schwab v. Crosby*, 451 F.3d 1308, 1322 (11th Cir. 2006). Other conflict of interest claims are reviewed under the *Strickland* standard, which requires a habeas petitioner to demonstrate actual prejudice from the alleged conflict of interest.

In the instant case, Petitioner's conflict of interest claim does not concern the joint representation of co-defendants. As such, the state court's requirement that Petitioner sufficiently allege prejudice was not contrary to, or an unreasonable application of, clearly established Federal law. *See Schwab*, 451 F.3d at 1328 (quoting 28 U.S.C. § 2254(d)(1)). Moreover, Petitioner has not established that the state court's denial of this claim pursuant to *Strickland*'s prejudice prong warrants federal habeas relief. Petitioner points to nothing in the record that provides any support for a conclusion that counsel's familiarity with Chapman or Smith – even if true – had any bearing whatsoever on the jury's verdict. *See Strickland* 466 U.S. at 694 (to establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."). On the basis of this record, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of federal law, or an unreasonable determination of the facts in light of the evidence adduced in state court.

### (3) Failure to impeach officer who had an interest in the outcome as a victim

Petitioner alleges that Officer Smith told Petitioner prior to trial that Petitioner had burglarized his home, and that he would do everything he could to get a conviction. Petitioner contends that he advised counsel of this statement, and that counsel should have impeached Smith's testimony with the information. Doc. 1. The state court rejected this claim on postconviction review because Petitioner did not specify how counsel's alleged error prejudiced his case.

Even assuming that Petitioner did in fact advise counsel of the alleged statement by Smith, Petitioner in the instant case – as in the state court – also does not explain how, but for counsel's failure to cross-examine Smith with this information, there is a reasonable probability that the outcome of the proceeding would have been different. If counsel knew of Smith's alleged statement to Petitioner, there could be any number of tactical reasons why she chose not to introduce the information at trial – the most obvious reason being that the alleged statement by Smith implicates Petitioner in criminal activity. Given the high degree of deference afforded to such strategic decisions, Petitioner has failed to show that the state court's rejection of this claim on *Strickland's* prejudice prong was contrary to, or an unreasonable application of


*Strickland*.

### 4. Failure to call Antonio Green as a witness

Petitioner contends that his counsel rendered ineffective assistance by failing to call Antonio Green to testify at trial, because Green would have testified that he did not know Petitioner and that the police reports stating that Green implicated Petitioner were false.  Doc. 1.  This claim was thoroughly explored at the evidentiary hearing, during which counsel explained that her strategic decision not to call Green – whose deposition testimony counsel described as "untruthful" – allowed her to exclude from evidence the police reports in which Green implicated Petitioner.  The state court concluded that counsel's decision reflected a reasonable trial strategy, and that Petitioner had demonstrated neither deficient performance nor prejudice.  The state court correctly afforded deference to counsel's strategic decisions, and Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of federal law, or an unreasonable determination of the facts in light of the evidence.

### 5. "Depriving" Petitioner of exculpatory evidence

Petitioner contends that counsel failed to challenge the State's fingerprint evidence and the State's failure to produce the stolen cell phone that was found in the possession of Petitioner's acquaintance, Lakeisha Roberson, with Petitioner's nickname programmed into it.  Officer Smith provided testimony about the phone and its contents, and Petitioner testified that he purchased the phone from Green and had programmed his nickname into the phone himself.  Doc. 1.   The state court rejected this claim

because Petitioner failed to specifically allege how the asserted errors by counsel resulted in prejudice.

Exculpatory evidence is defined as "evidence favorable to [the] accused" and "material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In the instant petition, Petitioner again fails to describe any additional exculpatory evidence with any specificity. As to the fingerprint evidence, Petitioner states "there wasn't any prints but the Petitioner's print on the vehicle not the interior as well." Doc. 1. Petitioner contends that the State should have produced the stolen cell phone at trial, but he does not explain how production of the phone would have exculpated him. At trial Petitioner offered his own exculpatory testimony as to how his fingerprint came to be found on the victim's car and why the victim's stolen cell phone had his nickname in it. Thus, the record reflects that counsel did in fact present exculpatory evidence on these matters. Petitioner complains that the State failed to "refute" his explanation, but the jury was free to weigh Petitioner's exculpatory testimony with the other evidence and reject it. The jury's rejection of Petitioner's testimony does not establish any error by counsel with respect to exculpatory evidence. On this record, Petitioner has failed to show that the state court's rejection of this claim on *Strickland's* prejudice prong was contrary to, or an unreasonable application of *Strickland*.

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the Petition for a Writ of Habeas Corpus, Doc. 1, be **DENIED,** and that a certificate of appealability be **DENIED**.

**IN CHAMBERS**  this 12th day of July 2011.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.